UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| GARY LYNN W.[1], | ) |
|     Plaintiff, | ) ) ) |
| v. | )    CIVIL NO. 3:21cv490 ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 7, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; congestive heart failure; chronic obstructive pulmonary disease (COPD); obesity, depression, anxiety and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally work in humidity and wetness, and occasionally work in dust, odors, fumes, and pulmonary irritants. The claimant can never work at unprotected heights, never work around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of her work-related duties. The claimant is limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas. The claimant can never interact with the general public, but she can occasionally interact with coworkers and supervisors. Every thirty minutes, the claimant needs a two to three minute mental break to clear her mind and refocus. Every thirty minutes, the claimant must be allowed to shift positions or alternate between sitting and standing for one to two minutes at a time while remaining on task.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 19, 1967 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

      10.      The claimant has not been under a disability, as defined in the Social Security Act, since December 7, 2018, the date the application was filed (20 CFR 416.920(g)).

(Tr. 27-37).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 22, 2022. On April 5, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April 20, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff was 50 years old on the alleged onset date. (Tr. 106). She completed high school and reported past work as a bartender and entertainer. (Tr. 339).

On October 27, 2017, Plaintiff was admitted to St. Joseph Regional Medical Center with chest pain. (Tr. 364). She was noted to have underlying coronary atherosclerotic disease. (Tr. 364). Decreased systolic function was also noted. (Tr. 365). Coronary artery bypass grafting was recommended; however, Plaintiff declined the surgery. (Tr. 365). Anxiety was also noted. (Tr. 389). Plaintiff described her symptoms as a tight, squeezing feeling in the chest with a small amount of shortness of breath. (Tr. 398). Left ejection fraction was noted as 40-45%. (Tr. 432).

On February 22, 2018, an x-ray of the cervical spine revealed degenerative disc and facet changes with moderate to severe loss of disc height at the C4-7 disc space levels. (Tr. 684).

On March 4, 2019, Plaintiff presented to the emergency room with complaints of neck pain radiating into her chest and upper left arm. (Tr. 699). She rated her pain as a ten out of ten. (Tr. 699). She was diagnosed with muscle strain and spasm. (Tr. 700).

On March 29, 2019, Plaintiff presented to the emergency room with symptoms of left arm pain and numbness. (Tr. 792). She reported feeling weak and shaky. (Tr. 792). She was noted to have a history of six myocardial infarctions and a cardiac stent. (Tr. 800). She reported associated diarrhea and numbness in her left hand. (Tr. 800).

On April 24, 2019, Plaintiff presented to the emergency room with chest pain that radiated down her neck and left arm. (Tr. 839). A CT scan of the cervical spine revealed prominent vacuum phenomenon at the left C4-5 neural foramen, which likely results in impingement of the exiting C6 nerve root. (Tr. 838). Additional multilevel degenerative changes were noted. (Tr. 838). Radiculopathy was suggested as the probable cause of her pain. (Tr. 840).

5

On May 8, 2019, an x-ray of the cervical spine revealed moderate to severe degenerative disc changes at C4-7. (Tr. 866).

On May 8, 2019, Plaintiff saw Gina Connolly, A/GNP, DNP, with complaints of being unable to raise her left arm. (Tr. 867). Plaintiff also complained of numbness and tingling that goes down into her fingers. (Tr. 867). Physical therapy was recommended as well as an MRI of the cervical spine to determine the presence of radiculopathy. (Tr. 868).

On May 21, 2019, Plaintiff presented to the emergency room with neck pain radiating to her left arm. (Tr. 881). She reported pain and numbness from the armpit to her fingers that increases when she turns her head. (Tr. 881). Radiculopathy in the cervical spine was suggested. (Tr. 882).

On May 28, 2019, an MRI of the cervical spine revealed cervical spondylosis at C4-7; borderline C5-7 canal stenosis with left ventral cord compression at C6-7; and multilevel foraminal narrowing. (Tr. 872).

On June 4, 2019, Plaintiff followed up with NP Connolly for her neck pain and MRI results. (Tr. 957). Plaintiff reported intense pain in her left arm. (Tr. 957). Upon examination, she exhibited left hand grip weakness. (Tr. 957). Plaintiff also complained of low back pain. (Tr. 957). Symptoms included generalized weakness, shortness of breath, pain in legs while walking, decreased exercise tolerance, excessive thirst, memory loss, fainting spells, dizziness, headaches, anxiety, depression, decreased attention span and sleeping problems. (Tr. 957).

On July 19, 2019, Plaintiff saw Daniel M. Cooke, M.D., for her neck and arm pain. (Tr. 981). Examination revealed tenderness with palpation on the left, decreased flexion and extension at the neck, diffuse tenderness in the lower lumbar spinous process region with decreased flexion

6

and extension at the waist. (Tr. 983).

On August 5, 2019, Plaintiff underwent an epidural steroid injection at the C6-7 level of the cervical spine. (Tr. 1019). On August 12, 2019, a spirometry test revealed severe airway obstruction, with low vital capacity. (Tr. 989). On August 19, 2019, Plaintiff was seen by NP Connolly following an epidural injection to the left C6-76 level of the cervical spine which provided some relief. (Tr. 1015). However, Plaintiff continued to report continued paresthesia and dropping of items. (Tr. 1016). NP Connolly suggested Plaintiff discuss surgery with a neurologist. (Tr. 1016).

On August 23, 2019, Plaintiff underwent a psychological evaluation performed by Rachael Garcia, Psy.D. and Alan Wax, Ph.D. at the request of the state agency. (Tr. 1002). Plaintiff reported constantly feeling helpless and hopeless with chronic suicidal thoughts. (Tr. 1002). She reported attempting suicide several times with the last attempt being three weeks prior to this examination. (Tr. 1002). She also reported panic attacks when she is around people. (Tr. 1003). She experiences vivid flashbacks and nightmares about past trauma. (Tr. 1003). She reported poor sleep, irritability and fatigue. (Tr. 1003). Plaintiff reported losing her balance and needing help getting in and out of the shower. (Tr. 1005). She reported being unable to cook due to lack of energy and motivation. (Tr. 1005). She cannot stand for a prolonged period of time and is unable to do any deep cleaning. (Tr. 1005). Anxiety keeps her from going to any stores. (Tr. 1005). She was diagnosed with persistent depressive disorder, generalized anxiety disorder, panic disorder, agoraphobia and post-traumatic stress disorder. (Tr. 1005).

On August 26, 2019, Dr. Bauer noted plaintiff was depressed and anxious during examination. (Tr. 1011). Her PHQ-9 score during the visit was twenty-six indicating severe

7

depression. (Tr. 1012). Plaintiff responded affirmatively to the self-harm questions and was noted to be a suicide risk with clinically significant symptoms. (Tr. 1012).

On October 7, 2019, Plaintiff returned to Dr. Bauer for chronic major depression and agoraphobia with panic attacks. (Tr. 1094). She reported no improvement despite doubling her medication for depression. (Tr. 1094). Examination revealed depressed and anxious mood. (Tr. 1098).

On October 17, 2019, Plaintiff saw Neal B. Patel, M.D., a neurologist, for her left arm numbness sand pain. (Tr. 1123). Dr. Patel examined Plaintiff and recommended surgery at the C6-7 level due to severe foraminal neuroforaminal stenosis at this level that was causing severe pain and limiting Plaintiff's quality of life. (Tr. 1123).

On December 13, 2019, Plaintiff returned to Dr. Patel for neck and left upper extremity pain. (Tr. 1210). Plaintiff reported stiffness, numbness and weakness along the left hand. (Tr. 1210). Plaintiff also reported right lateral thigh numbness with burning sensation. (Tr. 1210). Dr. Patel and Plaintiff decided to hold off on decompression surgery due to her high cardiac risk. (Tr. 1210).

On December 26, 2019, Plaintiff underwent a cervical epidural steroid injection. (Tr. 1170). On March 16, 2020, Plaintiff saw NP Connolly and complained of returning pain and burning in neck and back. (Tr. 1196). Plaintiff reported that relief from the injections had worn off and that it was difficult to reach overhead with cramping in the left hand. (Tr. 1196). Also on March 16, 2020, an x-ray of the lumbar spine revealed multilevel degenerative disc disease and degenerative facet arthritis with degenerative retrolisthesis at L5. (Tr. 1167).

On March 17, 2020, Dr. Bauer completed a treating source statement outlining Plaintiff's

8

psychological limitations. (Tr. 1135). Dr. Bauer noted that she has treated Plaintiff since November 5, 2018. (Tr. 1135). Dr. Bauer noted Plaintiff suffers from the following symptoms of depressive syndrome: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; decreased need for sleep; easy distractibility; motor tension; autonomic hyperactivity; apprehensive expectation; vigilance and scanning; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; recurrent obsessions or compulsions which are a source of marked distress; a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation; and thoughts of suicide. (Tr. 1135-36).

Dr. Bauer opined Plaintiff would be markedly limited in her ability to understand, remember or apply information; moderately limited in her ability to interact with others; and moderately limited in her ability to concentrate, persist or maintain pace. (Tr. 1137). Plaintiff would be markedly limited in her short-term memory and moderately limited in her long-term memory. (Tr. 1137). Plaintiff could maintain sustained concentration and persistence for thirty minutes before requiring a break. (Tr. 1138). She cannot work appropriately with the general public and can sometimes work appropriately with co-workers and supervisors. (Tr. 1138). She would be off-task more than twenty-five percent of the workday. (Tr. 1138). She would be absent more than four days per month. (Tr. 1139).

On April 6, 2020, an MRI of the lumbar spine revealed mild degenerative changes at

9

multiple levels. (Tr. 1194). On May 8, 2020, Plaintiff underwent a therapeutic cervical epidural steroid injection. (Tr. 1160). On June 8, 2020, Plaintiff saw NP Connolly following epidural steroid injections in the cervical spine. (Tr. 1199). Plaintiff reported axial back pain that was constant that radiates into the right lower extremity. (Tr. 1199). Plaintiff reported increased pain in the lower back and right lower extremity with ambulation, standing for longer periods of time and transitional movements. (Tr. 1199).

On June 26, 2020, Plaintiff underwent a right sacroiliac injection. (Tr. 1153). On July 14, 2020, Plaintiff was observed to have an antalgic gait with decreased range of motion at the waist. (Tr. 1334). Plaintiff reported increased pain with prolonged standing and walking and reported decreased sleep and function due to pain. (Tr. 1334). On July 29, 2020, Plaintiff underwent a lumbar facet injection at the bilateral L4-5 and L5-S1 levels. (Tr. 1146).

On September 24, 2020, Dr. Bauer completed a treating source statement outlining Plaintiff's physical work-related limitations. (Tr. 1313-17). Dr. Bauer opined Plaintiff would be off-task more than twenty-five percent due to her symptoms and would miss four or more days of work per month. (Tr. 1313). Dr. Bauer opined Plaintiff would need a break every fifteen minutes due to loss of attention and concentration. (Tr. 1313). Dr. Bauer opined Plaintiff can never lift and carry, can sit for one hour in an eight-hour workday and can stand/walk less than one hour in an eight-hour workday. (Tr. 1315). She opined Plaintiff would need an option to sit or stand at will. (Tr. 1315). Plaintiff can occasionally use her bilateral upper extremities for reaching, handling, fingering, feeling, pushing or pulling. (Tr. 1316). She can occasionally climb stairs and ramps, rotate her head and neck; can rarely balance; and can never climb ladders and scaffolds, stoop, kneel, crouch, or crawl. (Tr. 1317). She can never be exposed to unprotected

eights, moving mechanical parts, pulmonary irritants or extreme cold; and can rarely be exposed to humidity and wetness. (Tr. 1317).

On September 24, 2020, Dr. Bauer completed another treating source statement outlining Plaintiff's mental work-related limitations. (Tr. 1323-27). Dr. Bauer noted Plaintiff suffers from agoraphobia with panic attacks, major depression, mood disorder, and other chronic medical conditions. (Tr. 1323). She noted that Plaintiff has exhibited uncontrolled symptoms at all appointments with multiple attempts of changing medication regimen and counseling services without success. (Tr. 1323). She opined Plaintiff would be markedly limited in her ability to understand, remember or apply information; moderately limited in her ability to interact with others or maintain concentration, persistence and pace; and markedly limited in her short-term memory. (Tr. 1326). Plaintiff would need a break every thirty minutes due to lack of attention and concentration. (Tr. 1326). She would be off-task twenty-five percent of the workday and absent more than four days a month due to her symptoms. (Tr. 1327).

In support of remand, Plaintiff argues that the ALJ erred in her evaluation of Dr. Bauer's opinions. Pursuant to Social Security Ruling ("SSR") 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Additionally, an RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p; *see also* 20 C.F.R. § 416.945(a)(1) (residual functional capacity is the most someone can do despite their mental and physical limitations). In order to determine an RFC, the ALJ is instructed to base the assessment on "all of the relevant medical and other evidence." 20

11

C.F.R §§ 404.1545(a)(3), 416.945(a)(3).

On January 18, 2017, the SSA adopted new rules which, for claims filed after March 27, 2017, modify the rules for evaluating opinion evidence. 82 F.R. 5844, 5869 (1-18-2017). As this claim was filed December 28, 2018, the new rules apply here. 82 F.R. 5869. Factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(b)(2). Therefore, the regulations dictate that the ALJ "will explain" how the supportability and consistency factors were considered in the determination or decision. 20 C.F.R. § 416.920c(b)(2). Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. § 416.920c(a) and (b)(1).

Plaintiff points out that Dr. Bauer has the most longitudinal treating relationship with Plaintiff of any provider in the record. She was treating Plaintiff throughout the relevant period related to her various impairments during which time she diagnosed hypertension, hyperglycemia, COPD, cervical radiculopathy, obesity and chronic psychological conditions. (Tr. 1314). With respect to Dr. Bauer's assessment of Plaintiff's mental limitations, the ALJ found Dr. Bauer's opinions to be "somewhat persuasive." (Tr. 35). The ALJ summarized the opinion of Dr. Bauer and then concluded "some of the limitations described in her opinions are not fully consistent

12

with and supported by the record." (Tr. 35). Plaintiff contends the ALJ failed to build an accurate bridge between his rejection of an opinion and the evidence he relied upon in formulating the basis for his rejection. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2011); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). The ALJ did not discuss why some limitations were found persuasive while other limitations were rejected. (Tr. 35).

  For example, the ALJ accepted Dr. Bauer's marked limitations in Plaintiff's ability to understand, remember and apply information and her moderate limitations in Plaintiff's ability to maintain attention, concentration pace and moderate limitations in Plaintiff's ability to interact with others. (Tr. 35). The ALJ found these limitations "consistent with the record, as discussed above." (Tr. 35). However, this boilerplate, conclusory statement provides this Court with no ability to conduct a meaningful review because it is unclear what evidence, the ALJ is referring to when he states "as discussed above." (Tr. 35). A review of the evidence "as discussed above" includes evidence that is much more restrictive than that found in the RFC. The ALJ points to Plaintiff's testimony that she has panic attacks two to three times a day and is unable to work anywhere due to panic attacks. (Tr. 31). The ALJ notes Plaintiff's multiple suicide attempts. (Tr. 33). The ALJ points to evidence that Plaintiff does not finish what she starts and cannot be around people. (Tr. 39). The ALJ does not explain how this evidence supports the RFC determination and fails to create a logical bridge between the evidence and the RFC.

  Furthermore, the ALJ fails to conduct a proper analysis of supportability and consistency with this evidence. Under the new regulations, the ALJ must consider the factors listed in 20 C.F.R. 404.1520c, and "must 'explain how [they] considered the supportability and consistency

13

factors.'" *Michael v. Saul*, No. 2:20-CV-238, 2021 WL 1811736, at *9 (N.D. Ind. May 6, 2021) (citing 20 C.F.R. 404.1520c(2)). The ALJ decision cannot stand under the new regulations when the ALJ finds the opinion not persuasive because it is inconsistent with medical evidence but does not explain why that evidence is inconsistent with the opinion. *Id*. Here, the ALJ rejects the portions of Dr. Bauer's opinions regarding off-task behavior and absenteeism without providing any analysis of the factors. (Tr. 35). The only response provided by the ALJ concerning the rejection of these limitations is that he "does not find that [Plaintiff] has a medical need to miss more than four days a month and be consistently off task." (Tr. 35). Instead of discussing the evidence from Dr. Bauer or any evidence from any other medical source, he wholly rejects this portion of the opinion based on Plaintiff's ability to perform some part-time work. (Tr. 35). This explanation is not legally sufficient and does not comply with the regulations.

Finally, the ALJ provides no explanation as to where he arrived at the conclusion that Plaintiff would need a "two to three minute break to clear her mind and refocus" every thirty minutes. (Tr. 30-31). While this limitation appears to attempt to account for the limitations provided by Dr. Bauer, nothing in Dr. Bauer's opinion would suggest that Plaintiff would be able to regain her ability to concentrate and persist in two to three minutes. (Tr. 30-31). Dr. Bauer opined Plaintiff would require "enhanced supervision" and would be off task more than twenty-five percent of the workday. (Tr. 1323). Nothing in the record would suggest Plaintiff is able to remain on task if given a two to three minute break every thirty minutes. The ALJ has failed to explain where he arrived at this conclusion.

This Court finds that the AL's errors in evaluating Dr. Bauer's opinions renders his decision unsupported by substantial evidence. Thus, remand is required for a proper evaluation

14

of Dr. Bauer's opinions.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: April 22, 2022.

<u>s/ William C.  Lee</u><br>
William C. Lee, Judge<br>
United States District Court